Filed 8/10/22; Certified for Publication 9/7/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROGER MANLIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEVE MILNER, et al.<br><br>    Defendants and Respondents. | B313253, B315077<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV08154) |

    APPEALS from orders of the Superior Court of Los Angeles County, Robert B. Broadbelt, Judge. Affirmed in part, reversed in part, and remanded with directions.

    Roger A. S. Manlin, in pro. per., for Plaintiff and Appellant.

    Hamburg, Karic, Edwards & Martin, Gregg A. Martin and Ann S. Lee for Defendants and Respondents.

————————————————————

In a dispute between members of a limited liability company (LLC), plaintiff alleged that the LLC's managing member engaged in self-dealing to the detriment of both plaintiff and the company. After the managing member, represented by the LLC's attorneys, cross-complained against the plaintiff, the plaintiff cross-complained against both the managing member and the attorneys for further self-dealing and breach of fiduciary duty, alleging they misappropriated funds from the LLC to finance the litigation.

Cross-defendants specially moved to strike the complaint under the anti-SLAPP statute (Strategic Lawsuit Against Protected Activity; Code of Civil Procedure section 425.16 (section or § 425.16)), arguing the alleged conduct occurred as part of the litigation, which was protected activity.

Cross-defendants also moved for discovery sanctions.

The trial court found that a portion of the cross-complaint arose from litigation activity, and thus granted cross-defendants' special motion to strike. Plaintiff appeals from that ruling.

The trial court also entered discovery orders in 2019 and 2021 imposing monetary and evidentiary sanctions against the plaintiff. Plaintiff separately appeals from these rulings, and we consolidated the appeals.

We conclude that appropriation of funds to finance litigation is not protected activity. Accordingly, we reverse in part the order granting cross-defendants' special motion to strike.

We conclude that only the 2021 discovery order imposing monetary sanctions is appealable, and that order is affirmed. Finally, we conclude that the 2019 discovery order for monetary sanctions and the 2021 order insofar as it imposed nonmonetary

2

sanctions are nonappealable, but we will deem the appeal to constitute a petition for extraordinary relief, which we deny.

## BACKGROUND

### A. Litigation

We take the facts from the complaints, accepting them as true for purposes of these appeals.

Roger Manlin, an attorney, and Steven Milner jointly own and are the only members of eight real estate investment LLCs. Milner is the sole managing member of each LLC. Milner, without Manlin's knowledge or consent, engaged in self-serving conduct in breach of both his fiduciary duties and the eight LLC operating agreements.

Manlin sued Milner for breach of contract, breach of fiduciary duty, fraud, unfair competition, conversion, and financial elder abuse, and sought an accounting.

Milner and the LLCs, represented by the law firm Hamburg, Karie, Edwards & Martin, and attorneys Ann Lee and Gregg Martin (collectively "Attorneys"), cross-complained for legal malpractice and breach of fiduciary duty, and sought declaratory relief and rescission of the LLC agreements.

In response, Manlin cross-complained on behalf of himself and the LLCs against Milner and the Attorneys for further acts of self-dealing and elder abuse.

As pertinent here, Manlin's cross-complaint alleged in the first cause of action, for breach of written operating agreements, that Milner breached the LLC operating agreements "by his diversion of funds from the LLCs in order to pay legal expenses of defending himself in the Manlin complaint against him, and suing Manlin in the Milner cross-complaint, and his refusal to

3

provide and concealment of information relating to the retention of and payment to the Attorneys of their legal fees."

The second cause of action, for breach of fiduciary duty against only Milner, alleged that Milner breached his fiduciary duty by failing to "stipulate to continue any currently existing hearing date, response date, notice date, motion cut off date, or other date associated with the presently scheduled January 8, [2020] trial."

The third cause of action, for breach of fiduciary duty against the Attorneys, alleged the Attorneys breached a fiduciary duty owed to Manlin because they "concealed [their] agreements with the LLCs, concealed the payments made by the LLCs to themselves without Manlin's knowledge or consent, wrongfully diverted and continue to divert funds from each of the LLCs to Attorneys in order to pay all of Milner's personal legal expenses of defending the Manlin complaint against him, individually, and proceeding with [the] Milner cross-complaint against Manlin in the names of the LLCs."

The fourth cause of action, for elder abuse, against Milner, alleged that Milner's conduct constituted elder abuse.

## B. Anti-SLAPP Motion

Milner and the Attorneys specially moved to strike Manlin's cross-complaint or, in the alternative, portions thereof, arguing that funding litigation constitutes protected petitioning activity, and Manlin could not show a probability of prevailing on any cause of action.

Manlin opposed the motion, supporting the opposition with Milner's deposition testimony indicating the Attorneys were paid from LLC funds.

4

The trial court found that the first and third causes of action arose from Milner and the Attorneys "allegedly diverting funds from the LLCs to pay [Milner's] legal expenses in this litigation. . . . Thus, the first and third causes of action are based on the payment of funds to maintain a lawsuit, i.e., the attorney's fees incurred by Steve Milner in this lawsuit."

The court found that Manlin made no attempt to establish the legal sufficiency of his second and fourth causes of action and presented no evidence of diversion of LLC funds to pay Milner's legal fees. Accordingly, the court granted the anti-SLAPP motion and ordered that Manlin's cross-complaint be stricken in its entirety. The court awarded attorney fees to cross-defendants.

Manlin appeals from that ruling.

## C.    Discovery Issues

On June 7, 2019, Milner and the LLCs served their first set of document requests on Manlin. We set forth the relevant request categories, followed by pertinent individualized requests:

Request Nos. 11-19 sought all documents showing any capital contribution Manlin made to the LLCs.

Request Nos. 20-28 sought all documents showing distributions Manlin received from the LLCs.

Request Nos. 31-38 sought agreements for any legal services Manlin performed for the LLCs.

Request Nos. 41-48 sought documents relating to legal services Manlin performed for the LLCs, including Manlin's client files.

Request Nos. 50-59 sought all invoices for legal services Manlin performed for Milner and the LLCs.

Request Nos. 60-69 sought all checks or other documents showing payment for legal services Manlin performed for Milner and the LLCs.

Request Nos. 72-80 sought all communications regarding legal services Manlin performed for the LLCs.

Request No. 29 sought all agreements between Manlin and defendants.

Request No. 30 sought all agreements for any legal services Manlin performed for defendants.

Request No. 40 sought all documents reflecting any legal service Manlin performed for the defendants, including Manlin's client files.

Request No. 70 sought all communications regarding any business transaction between Manlin and the defendants.

Request No. 71 sought all communications with Milner regarding any legal service Manlin performed for the defendants.

Request No. 81 sought all documents regarding any business transaction between Manlin and the defendants.

Manlin's responses included essentially the same objection to each request. As an exemplar, his response to Request No. 2, which sought "all documents relating to Nadeau LLC," was the following: "Objection. The request fails to identify documents requested to be produced with reasonable particularity; its use of the defined terms 'relate, related or relating to', 'all', 'documents' and 'communications' (1) is unduly burdensome and harassing to the extent that the burden, expense, intrusiveness of providing a complete response clearly outweighs the likelihood that the information sought will lead to the discovery of relevant and admissible evidence, and (2) renders the request susceptible to numerous inconsistent and duplicative interpretations; is vague,

ambiguous, and overbroad in scope; seeks information not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence; seeks information which is a matter of public record and as readily available to propounding party as to responding party, including information which propounding party has a fiduciary and contractual obligation to maintain; seeks information that is protected by the attorney work product doctrine; is duplicative of each other request referring to the LLC identified in this request. Subject to and without waiving the foregoing objections and any applicable General Objections, responding party responds as follows: Responding party is in the process of conducting a reasonably diligent search and is assembling and will produce documents which it believes are responsive to this request that it locates in its possession, custody and control, to be produced at a mutually agreeable time and place."

As another exemplar, Manlin's response to Request No. 11, which sought "ALL DOCUMENTS showing any capital contribution YOU made to NADEAU LLC," was the following: "The request fails to identify documents requested to be produced with reasonable particularity; its use of the defined terms 'relate, related or relating to', 'all', 'documents' and 'communications' (1) is unduly burdensome and harassing to the extent that the burden, expense, intrusiveness of providing a complete response clearly outweighs the likelihood that the information sought will lead to the discovery of relevant and admissible evidence, and (2) renders the request susceptible to numerous inconsistent and duplicative interpretations; is vague, ambiguous, and overbroad in scope; seeks information not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery

7

of admissible evidence; seeks information which is a matter of public record and as readily available to propounding party as to responding party, including information which propounding party has a fiduciary and contractual obligation to maintain; seeks information that is protected by the attorney work product doctrine; is duplicative of each other request referring to the LLC identified in this request.  Subject to and without waiving the foregoing objections and any applicable General Objections, responding party responds as follows:  Responding party is in the process of conducting a reasonably diligent search and is assembling and will produce documents which it believes are responsive to this request that it locates in its possession, custody and control, to be produced at a mutually agreeable time and place."

Manlin provided no documents.

On September 3, 2019, the trial court entered a stipulation between the parties for Manlin to produce within 10 days "documents to which no objection is made responsive to Defendant's Document Requests, Set One."

On September 13, 2019, Manlin served further responses, 12 out of 81 of which asserted essentially the same objections as before.  For example, his further response to Request No. 2 was the following:  "Objection.  The request fails to identify documents requested to be produced with reasonable particularity; its use of the defined terms 'relate, related or relating to', 'documents' is vague, ambiguous, and overbroad in scope; seeks information which is a matter of public record and as readily available to propounding party as to responding party, including information which propounding party has a fiduciary and contractual obligation to maintain; seeks information that is

8

protected by the attorney work product doctrine; is duplicative of each other request referring to the LLC identified in this request. Subject to and without waiving the foregoing objections and any applicable General Objections, responding party responds as follows: the production will be allowed in part and all documents that are in the possession, custody or control of responding party, to which no objection has been made, will be included in the production."

Manlin's response to Request No. 11 was the following: "The production will be allowed and all documents that are in the possession, custody or control of the responding party will be included in the production."

In responding to other requests, Manlin stated separately with respect to Request Nos. 20-28 (distributions), 31-38 (agreements for legal services), 41-48 (documents relating to legal services, including client files), 50-59 (invoices), and 60-69 (payment), that "After diligent search and reasonable inquiry, responding party has been unable to comply with or locate any documents responsive to this request, and believes that any responsive documents are no longer in his possession, custody, or control. *Plaintiff* [*sic*: Defendant] has possession, custody, or control of the documents requested." (Italics added.)

With respect to Request Nos. 11-19 (capital contributions), Manlin stated he would produce responsive documents. Later, in opposition to Milner's sanctions motion, *post*, Manlin declared he had produced "all documents in full compliance with the Court's September 3 order."

With respect to Request Nos. 72-80 (communications regarding legal services), Manlin produced some responsive documents and stated that "all documents that are in the

9

possession, custody or control of responding party, to which no objection has been made, will be included in the production." Later, in opposition to cross-defendants' sanctions motion, *post*, Manlin declared he had produced "all documents in full compliance with the Court's September 3 order."

On September 15, two days after the stipulated production deadline, Manlin produced a thumb drive containing approximately 2,165 pages of documents, none of which responded to Request Nos. 11-28, 41-48, or 50-69. Furthermore, although Request Nos. 72-80 sought all communications relating to legal services Manlin performed for the LLCs, he produced only 489 pages of emails—most from the years 2018 and 2019, and none dating before 2016—out of the over 3,300 the parties were known to have exchanged dating from 2010.

Manlin never explained why documents he could be expected to access—such as his own bank records—might be beyond his control.

On November 8, 2019, Milner sent a meet and confer letter to which Manlin did not respond, although on November 13 Manlin asked Milner to agree to continue trial because he had been in an accident and was hospitalized on November 12.

On November 13, 2019, Milner moved to compel further responses to Request Nos. 29, 30, 40, 70, 71 and 81, and sought $5,395 in monetary sanctions. In support of the motion, Ann Lee, one of the Attorneys, declared that Manlin's thumb drive contained no "documents relating to Plaintiff's representation or agreement for legal services with Defendant."

On November 27, 2019, before the first motion was resolved, Milner moved for issue, evidence and/or monetary sanctions (in the amount of $14,472) based on Manlin's failure to

serve proper supplemental responses with respect to Request Nos. 11-19 and 72-80, and failure to serve further code compliant responses to Request Nos. 2-10, 20-28, 31-39, 41-48 and 50-69.

On December 9, 2019, after a hearing Manlin did not attend, the trial court granted Milner's first motion, to compel further responses, and imposed sanctions against Manlin in the amount of $4,110.

On December 19, 2019, Manlin moved for reconsideration of the December 9 order, arguing that he had been involved in an accident on November 12, was hospitalized to December 3, and was unable to defend against the November 13 discovery motion.

On December 3, 2020, the court granted Manlin's motion for reconsideration. Upon reconsideration the court found that Milner had requested Manlin's client file relating to his representation of Milner and the LLCs, but Manlin initially failed to respond or provide the file, and meritlessly objected to and refused to comply with Milner's document requests Nos. 29, 30, 40, 70, 71 and 81. In his supplemental response pursuant to the September 3, 2019 stipulated order, Manlin raised blanket meritless objections and produced a thumb drive that contained "no documents relating to Manlin's representation or agreement for legal services with" Milner or the LLCs. Manlin thereafter failed to respond to Milner's November 8, 2019 meet and confer letter.

The court therefore affirmed its December 9, 2019 order in its entirety.

On March 2, 2020, the trial court held a hearing on Milner's motion for issue, evidence and monetary sanctions. Because Manlin's discovery response that "Plaintiff" had possession of the requested documents contradicted his

11

representation that *he* had no such possession (in that Manlin is the plaintiff), the court continued the hearing to afford him an opportunity to provide amended supplemental responses correcting the apparent typo.

On April 1, 2020, Manlin served amended supplemental responses in which he addressed Milner's requests by category—e.g., requests Nos. 20-28, 31-38, 41-48, 50-59 and 60-69, pertaining to legal services Manlin performed for the LLCs—and changed "plaintiff" to "defendant."

On April 6, 2021, after several continuances due to the COVID 19 pandemic, the trial court found Manlin's amended supplemental responses failed to comply with Code of Civil Procedure section 2031.230 by failing to "respond separately to each item or category of item, and instead provides a single amended further response to several groups of requests." It therefore disregarded the supplemental responses and looked to Manlin's September 13 and 15, 2019 further responses.

The court found Manlin's September 13, 2019 further responses were "inconsistent and contradictory, and [did] not comply with . . . section 2031.230 for statements of representation of inability to comply," because "[o]n the one hand, Manlin states that he does not have possession, custody or control of the documents," but "[o]n the other hand, Manlin states that he does have possession, custody or control of the documents." The court credited Lee's declaration that Manlin's thumb drive contained no documents responsive to several requests, and therefor concluded that Manlin had misused the discovery process in his responses to Request Nos. 11-19, 20-28, 31-38, 41-48, 50-59, 60-69, and 72-80.

12

The court found Manlin's failure to comply with Code of Civil Procedure section 2031.230 and failure to produce responsive documents constituted willful disobedience of the court's September 3, 2019 order.

The court denied Milner's request for issue sanctions but granted the request for evidence sanctions, ordering that Manlin be prohibited from introducing evidence of any capital contributions he made to the LLCs (Request Nos. 11-19), any distributions he received from the LLCs (Request Nos. 20-28), or any communications regarding legal services he performed for the LLCs (Request Nos. 72-80). The court also granted in part Milner's request for $18,018 in monetary sanctions, awarding him $11,850.

Manlin appeals from the trial court's December 9, 2019 and April 6, 2021 discovery orders.

## DISCUSSION

### I.    Anti-SLAPP Appeal

Manlin Argues the trial court improperly granted Milner's and the Attorneys' anti-SLAPP motion because the gravamen of the cross-complaint, that Milner and the Attorneys diverted funds from the LLCs to pay Milner's legal fees, does not constitute protected activity. We agree.

#### A.    Anti-SLAPP Analysis and Standard of Review

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc*. (2019) 7 Cal.5th 871, 883-884.) Thus, a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the

13

California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) For these purposes, protected activity "includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) To satisfy this burden, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the

14

plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) At this stage of the proceedings, a plaintiff "need only establish that his or her claim has 'minimal merit.' " (*Ibid*.) Although " 'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Ibid*.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

"Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief — each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action — to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010 (*Bonni*).) "[T]o the extent any acts are unprotected, the claims based on those acts will survive." (*Id*. at p. 1012.)

We review the trial court's order granting the anti-SLAPP motion de novo, applying the same two-step analysis. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.) We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity. (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

15

### B.     Application

#### 1.     First, Third, and Fourth Causes of Action

Here, the gravamen of the first and third (and derivatively the fourth) causes of action in Manlin's cross-complaint is that Milner and the Attorneys breached fiduciary duties owed to Manlin and the LLCs by diverting the LLCs' money to fund Manlin's legal expenses.  In the first cause of action, Manlin alleges Milner wrongfully diverted "funds from the LLCs in order to pay legal expenses of defending himself in the Manlin complaint against him, and suing Manlin in the Milner cross-complaint," and concealed information relating to the Attorneys' employment.  In the third cause of action, Manlin alleges the Attorneys "wrongfully diverted and continue to divert funds from each of the LLCs to [themselves] in order to pay all of Milner's personal legal expenses."

Cross-defendants argue that funding litigation constitutes protected petitioning activity (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056), and that Manlin's cross-complaint arose from that activity.  We disagree.

To determine whether a challenged allegation or claim "arises from" protected activity we must determine whether protected activity was the alleged injury-producing act forming the basis for the claim.  (*Park, supra*, 2 Cal.5th at pp. 1062-1063.) " 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' "  (*Id.* at p. 1063.)

"[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions

16

by the defendant supply those elements and consequently form the basis for liability." (*Park*, *supra*, 2 Cal.5th at p. 1063.) In so doing, the courts should be "attuned to and . . . respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Id*. at p. 1064.)

Here, the element of Manlin's claim for breach of fiduciary duty is the self-dealing act of diverting funds from the LLCs in which Manlin owns an interest. The allegation that the cross-defendants engaged in this self-dealing completes the claim. *Why* they did so, for example to fund litigation,—is not an element of the claim, and therefore forms no basis for liability.

In *Park*, for example, the plaintiff alleged that a university discriminated against him in denying him tenure. The complaint also alleged that "a school dean 'made comments to Park and behaved in a manner that reflected prejudice against him on the basis of his national origin.'" (*Park*, *supra*, 2 Cal.5th at p. 1068.) The university specially moved to strike the complaint, arguing Park's suit arose from the numerous communications that led up to and followed its decision to deny him tenure, and these communications were protected activities. (*Id*. at p. 1061.)

The Court held that the elements of Park's claim depended not on any statements about or specific evaluations of him in the tenure process, "but only on the denial of tenure itself and whether the motive for that action was impermissible. The tenure decision may have been communicated orally or in writing, but that communication does not convert Park's suit to one arising from such speech. The dean's alleged comments may supply evidence of animus, but that does not convert the statements themselves into the basis for liability. As the trial

17

court correctly observed, Park's complaint is 'based on the act of denying plaintiff tenure based on national origin. Plaintiff could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims.' " (*Park*, *supra*, 2 Cal.5th at p. 1068.)

Here, cross-defendants allegedly breached fiduciary duties owed to Manlin and the LLCs by diverting the LLCs' money. No element of Manlin's claim depends on the purpose for that diversion, but only on the diversion itself and whether it constituted self-dealing. The diversion may have been to further some protected activity—for example to fund a political campaign or publish a newsletter or fund litigation—but that purpose does not convert Manlin's suit to one arising from the protected activity. The protected use to which cross-defendants put the diverted funds may supply evidence of the selfishness of their self-dealing but does not convert the use itself into the basis for liability. Manlin's complaint is based on the act of diverting funds from the LLC for selfish purposes. Manlin could have omitted allegations regarding funding lawsuits and still state the same claim. (See *Baharian-Mehr v. Smith* (2010) 189 Cal.App.4th 265, 273 [where a plaintiff alleges that a defendant misused corporate funds to finance wrongful litigation, the gravamen is the misuse of corporate funds, not the wrongful litigation]; see also *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 887 [injury-producing conduct, not merely motivating conduct, must constitute protected activity].) We therefore conclude the anti-SLAPP motion was improperly granted as to Manlin's first, third and fourth causes of action.

## 2. Second Cause of Action

The gravamen of Manlin's second cause of action is that Milner breached his fiduciary duty by failing to "stipulate to continue any currently existing hearing date, response date, notice date, motion cut off date, or other date associated with the presently scheduled January 8, [2020] trial." In this instance, the alleged injury-producing conduct—failure to conduct litigation in a certain way—constitutes protected petitioning activity.

Manlin offers no explanation how he could prevail on a cause of action challenging the way a party conducts litigation. He could not, as litigation conduct is privileged. (Civ. Code, § 47, subd. (b) [communications made during judicial proceedings are privileged]; *Kettler v. Gould* (2018) 22 Cal.App.5th 593, 607 [privilege applies to any communication designed to achieve the objects of the litigation].)

"A plaintiff cannot establish a probability of prevailing if the litigation privilege precludes a defendant's liability on the claims." (*Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 115.) Therefore, the anti-SLAPP motion was properly granted as to Manlin's second cause of action.

## II. Discovery Appeal

Manlin contends the only evidence supporting the trial court's December 9, 2019 order (compelling further responses and imposing $4,100 in sanctions) and April 6, 2021 order (imposing evidentiary and monetary sanctions) was Lee's declaration that the thumb drive Manlin produced contained no "documents relating to Manlin's representation or agreement for legal services with Cross-Complainants." Manlin argues this evidence was insufficient to justify either order, and further argues the

19

court abused its discretion in refusing to consider Manlin's April 1, 2020 responses, in which he corrected the plaintiff/defendant typo.

## A.   Dismissal and the Scope of Appeal

Manlin purports to appeal from both the December 9, 2019 and April 6, 2021 orders.  (He expressly abandons any appeal as to the reconsideration order.)  We first consider whether the December 9 order, compelling further responses and imposing $4,100 in sanctions, and the April 6 order imposing evidentiary and $11,850 in sanctions are appealable.  Milner argues the December 9, 2019 order and the April 6, 2021 order—insofar as it imposes evidentiary sanctions— are not appealable, and Manlin's appeal as to them must be dismissed.

"A trial court's order is appealable when it is made so by statute."  (*Griset v. Fair Political Practices Com'n* (2001) 25 Cal.4th 688, 696.)  Under Code of Civil Procedure section 904.1, an appeal may be taken from "an interlocutory judgment directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)" (§ 904.1, subd. (a)(11)) or from "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)." (§ 904.1, subd. (a)(12)).[1]

No statute authorizes direct appeal from an order imposing under $5,000 in monetary sanctions, nor from an order compelling compliance with a discovery order.  "An attempt to appeal from a nonappealable order does not give this court

---

[1] Undesignated statutory references will be to the Code of Civil Procedure.

jurisdiction or authority to review it." (*Sherman v. Lewis* (1913) 166 Cal. 524, 525.)

However, we need not dismiss a direct appeal from such orders if circumstances suggest the appeal should be treated as a petition for an extraordinary writ. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400.) Here, to require the parties to wait for the complaint and cross-complaints to be resolved before resolving Manlin's challenges to the court's sanctions orders is an inadequate legal remedy, as it might lead to unnecessary trial proceedings, skew evidence presented at trial, or influence settlement negotiations or any final award of attorney fees. Further, the monetary sanctions issue is final between the parties and ripe for early resolution, and the record on them is sufficiently developed to afford adequate appellate review. To dismiss the appeal rather than exercising our power to reach the merits through a mandate proceeding would, under the unusual circumstances before us, be "unnecessarily dilatory and circuitous." (*Id*. at p. 401.) Accordingly, we treat the appeal as a petition for writ of mandate.

In any event, the April 6, 2021 order is appealable insofar as it imposes a monetary sanction exceeding $5,000. (See § 904.1, subd. (a).) In reviewing it, we necessarily consider the correctness of the entire April 6, 2021 order, as well as the December 9, 2019 order, because both the December 9 order and the appealable portion of the April 6 order are founded on the same reasoning underlying the April 6 monetary sanction.

### B. Discovery Misuse

Manlin contends the trial court abused its discretion in determining he misused the discovery process by disobeying the court's September 3, 2019 order. We disagree.

21

### 1. Applicable Law

"Misuses of the discovery process include, but are not limited to," "[d]isobeying a court order to provide discovery" and "opposing, unsuccessfully and without substantial justification, a motion to compel . . . discovery." (§ 2023.010, subds. (g), (h).) The Civil Discovery Act (§ 2016.010 et seq.) provides in pertinent part: "To the extent authorized by the chapter governing any particular discovery method . . . , the court, after notice . . . and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] (a) . . . If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a).)

Section 2031.210, subdivision (a), provides that a party to whom a demand for inspection has been directed "shall respond separately to each item or category of item."

Section 2031.230 provides that "A representation of inability to comply with the particular demand for inspection . . . shall affirm that a diligent search and a reasonable inquiry has been made in an effort to comply with that demand. This statement shall also specify whether the inability to comply is because the particular item or category has never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer, in the possession, custody, or control of the responding party. The statement shall set forth the name and address of any natural person or organization known or believed

22

by that party to have possession, custody, or control of that item or category of item."

Section 2031.310, subdivision (i), authorizes a monetary sanction if a party fails to obey an order compelling further response. (See also § 2023.030.)

We review an order imposing monetary sanctions "under the deferential abuse of discretion standard. [Citation.] 'A court's decision to impose a particular sanction is "subject to reversal only for manifest abuse exceeding the bounds of reason." ' " (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435.) We resolve all evidentiary conflicts in favor of the trial court's ruling. (*Sears, Roebuck & Co. v. National Union Fire Ins. Co.* (2005) 131 Cal.App.4th 1342, 1350.)

### 2. Application

#### a. December 9, 2019 Order

Here, Manlin engaged in gamesmanship by providing incomplete and noncompliant responses, necessitating multiple efforts to compel compliance with a basic discovery obligation and needlessly prolonging the discovery dispute. His first response contained boilerplate objections having little pertinence to the actual requests. The second response contained more frivolous objections, and the ultimate production was sparse and two days late. The trial court was very familiar with the case and the parties and was in the best position to evaluate Manlin's stated reasons for his discovery activities. It certainly could have deemed his initial discovery responses to be so frivolous as to have been in bad faith, such that any subsequent professions of good faith would be suspect. Under these circumstances, we cannot conclude that the trial court's decision to impose $4,100 in monetary sanctions constituted a " 'manifest abuse exceeding the

bounds of reason.' " (*Doe v. United States Swimming, Inc., supra*, 200 Cal.App.4th at p. 1435.)

### b.  April 6, 2021 Order

Manlin argues the April 6, 2021 order was impermissibly punitive.  We disagree.

A trial court has broad discretion to impose discovery sanctions, but they " 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' " (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1327.)  A discovery sanction should only be such as is " 'suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks,' " and may not be designed to impose punishment.  (*Ibid.*)

Here, although the April 6, 2021 order was long delayed and ostensibly preceded by several discovery proceedings occurring after the December 9, 2019 order, because of peculiarities in the proceedings both orders pertained to the same discovery response:  Manlin's further responses propounded on September 13 and 15, 2019.  (Manlin had attempted to supplement these further responses, but the court eventually disregarded the supplement and again found that the September 13 further responses were inadequate.)  The court thereafter ordered that Manlin be prohibited from introducing evidence of any capital contributions he made to the LLCs, any distributions he received from the LLCs, or any communications regarding legal services he performed for them.  The court also ordered that he pay Milner $11,850.

Given the deferential standard of review, we cannot conclude that the evidentiary sanction was punitive.  The object

24

of discovery is to prevent surprise at trial, but Manlin engaged in conduct that the trial court could have reasonably found was designed to conceal. With respect to both disputed and undisputed transactions, Manlin delayed producing what was clearly in his possession and failed to make a diligent search for records he could easily have obtained. For example, the lack of Manlin's own bank records was an objective indicator that he could have searched more diligently for records. A trial judge is in the best position to develop a sense of the parties and whether they are engaging in delay or misconduct. Here, over the course of two years the judge patiently presided over a stipulated production schedule, a first motion to compel further responses, and a second motion, for sanctions, all of which resulted in only a tepid production. The court was therefor well within its discretion to finally impose evidentiary sanctions.

The April 6, 2021 monetary sanction was also permissible. "The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct. . . . [T]he court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§ 2023.030, subd. (a); see also § 2031.310, subd. (i) [monetary sanction may be imposed in lieu of or in addition to issue or evidence sanction].) For a trial court to decline to award *any* amount of monetary sanctions when it finds discovery misconduct has occurred is arbitrary and an abuse of discretion. (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 77.)

Here, the court found:  (1) Manlin's amended supplemental responses failed to comply with Code of Civil Procedure section 2031.230 by failing to "respond separately to each item or category of item, and instead provides a single amended further response to several groups of requests"; (2) Manlin's September 15, 2019 drive contained no documents responsive to several requests; (3) Manlin had misused the discovery process in his responses to Request Nos. 11-19, 20-28, 31-38, 41-48, 50-59, 60-69, and 72-80; and (4) his failure to comply with section 2031.230 and failure to produce responsive documents constituted willful disobedience of the court's September 3, 2019 order.

As discussed above, the court was in the best position to evaluate Manlin's justifications for deficient responses, and as with the December 9, 2019 order, we cannot conclude that the trial court's findings and decision on April 6, 2021 to impose additional monetary sanctions constituted a manifest abuse exceeding the bounds of reason.

## DISPOSITION

The April 6, 2021 order imposing monetary sanctions is affirmed.  The appeal as to other discovery orders is deemed a petition for an extraordinary relief, which is denied.

The anti-SLAPP order striking Manlin's cross-complaint is affirmed as to the second cause of action but otherwise reversed.  The trial court is directed to vacate its order awarding Milner anti-SLAPP attorney fees and reconsider that order in

26

light of our holding.  Both sides are to bear their own costs on appeal.


                                        CHANEY, J.

We concur:


        BENDIX, Acting P. J.


        MORI, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 9/7/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROGER MANLIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>STEVE MILNER et al.,<br><br>    Defendants and Respondents. | B313253, B315077<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV08154)<br><br>CERTIFICATION AND ORDER<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed August 10, 2022, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

<u>CERTIFIED FOR PUBLICATION.</u>

_____
BENDIX, Acting P. J.     CHANEY, J.     MORI, J.*

---

\*   Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.